Jason R.N. Monteleone
JOHNSON & MONTELEONE, L.L.P.
405 South Eighth Street, Suite 250
Boise, Idaho 83702
Telephone: (208) 331-2100
Facsimile: (208) 947-2424
*jason@treasurevalleylawyers.com*
Idaho State Bar No. 5441

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Joshua Michael Nall,<br><br>          Plaintiff<br><br>v.<br><br>Warden Keith Yordy, Idaho Department of Correction, and CERT Members Cpl. Tyler Nicodemus, Sgt. M. Tamez, Operator Fish, Operator Cpl. R. Hiese, Operator Trevor D. Lewis, Sgt. Frasier, and Sgt. Segadelli, and John/Jane Does I through X, whose true identities are presently unknown,<br><br>          Defendants | **Case No.  1:15-CV-00474-TJH**<br><br>**MEMORANDUM IN OPPOSITION TO IDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 73)** |

COMES NOW Plaintiff, by and through his counsel of record, Jason R.N. Monteleone of the law firm of Johnson & Monteleone, L.L.P., and hereby submits this *Memorandum in Opposition to IDOC Defendants' Motion for Summary Judgment* (Dkt. 73).

## INTRODUCTION

This is a Fourth Amendment/Eighth Amendment excessive force/cruel punishment case. In such cases, not surprisingly, there are two, very different versions of what happened to Plaintiff on the date of loss, June 3, 2015.

Though a graduated use of force procedure was to be utilized, it was not followed by the Critical Emergency Response Team ("CERT") members during the altercation on June 3, 2015, involving Plaintiff. Plaintiff can present sufficient evidence that he was subjected to excessive force, and this factual reality prevents the entry of summary judgment in the case *sub judice* on the basis of qualified immunity. Moreover, Plaintiff can establish the excessiveness of the force perpetrated against him through testimony other than his own.

Casey Eggiman and Paul Spencer, two (2), correctional officers who were employed by IDOC and witnessed the events which are the basis of the instant litigation have testified, during their depositions, that excessive force was used on Plaintiff on the date in question. *Affidavit of Counsel in Opposition to IDOC Defendants' Motion for Summary Judgment* (hereafter "*Affidavit of Counsel*"), filed herewith, Ex. 1 (Deposition of Casey Eggiman (hereafter "*Eggiman Depo.*")) at 16:21-17:7; *Affidavit of Counsel*, Ex. 2 (Deposition of Paul Spencer (hereafter "*Spencer Depo.*")) at 30:25-31:16. The deposition testimony of these witnesses establishes a number of genuine issues of material fact which directly bear on the issue of qualified immunity and preclude the entry of summary judgment:

    1.) Both Eggiman and Spencer were IDOC correctional officers on the date of loss and were working in Unit 8 at the Idaho State Correctional Institution ("ISCI"),

where the greatest amount of excessive force was exacted upon Plaintiff. *Eggiman Depo.* at 5:12-14; *Spencer Depo.* at 6:6-11. Though Plaintiff was subjected to excessive force by the CERT members at Units 7 and 9 at ISCI also on the day in question.

2.) Eggiman had been employed with IDOC for a year and a half at the time of the relevant incident, and Spencer had been with IDOC for eighteen (18) years. *Eggiman Depo.* at 5:3-11; *Spencer Depo.* at 7:21-8-1.

3.) Plaintiff was not physically resisting the CERT members, was not being physical or aggressive toward the CERT members, and was only enquiring as to why he was being handcuffed behind his back, shackled at the ankles, wearing only his underwear, and being treated so aggressively by the CERT members. *Eggiman Depo.* at 13:17-14:22, 19:10-19, 22:23-23:18, 27:3-28:6, and 32:1-33:5; *Spencer Depo.* at 20:9-22:23, 26:21-27:11, 38:16-18, and 47:11-48:20.

4.) At least one CERT member was telling Plaintiff, …[T]o shut the fuck up." *Eggiman Depo.* at 27:3-18.

5.) Plaintiff was not a particularly difficult inmate with whom to interact, nor was he known to be violent. *Eggiman Depo.* at 17:22-18:2; *Spencer Depo.* at 24:21-25:18.

6.) The use of force used by the CERT members on Plaintiff was excessive, though he was not resisting their efforts. *Eggiman Depo.* at 16:21-17:7, 19:10-19, 28:7-29:15, 34:2-10, and 37:11-39:8; *Spencer Depo.* at 30:25-31:19.

7.) IDOC's employees were trained to use a graduated use of force at the Police Officer Secondary Training ("POST") Academy. *Eggiman Depo.* at 26:16-25.

8.) The CERT members "dragged" Plaintiff from the strip-out cage in Unit 8 to a cell, as he was unable to walk on his own volition. *Eggiman Depo.* at 33:6-17.

9.) In June 2015, it was clearly established law that excessive force was illegal, and IDOC's employees were trained in this fashion at POST. *Eggiman Depo.* at 40:13-16 and 42:3-7.

10.) The processing cage or "strip-out cage" in Unit 8 was only 4'x4'x7', and this is where the CERT members split open Plaintiff's skull by bashing it off the cinder block walls and the metal grates of the very small confinement area. *Spencer Depo.* at 39:9-40:2, 44:19-45:17, 47:11-48:20, and 50:7-25.

11.) Correctional Officer Spencer never witnesses so much blood in any maneuver at IDOC in his twenty-one (21) years of employment with IDOC. *Spencer Depo.* at 58:11-25.

Where excessive force is used in violation of clearly established law, the state actor (here, the seven (7) CERT members) are not entitled to qualified immunity. Both Correctional Officers Eggiman and Spencer have testified that it was clearly established law, as of the date of this excessive force incident, that the use of excessive force violated clearly established law. *Eggiman Depo.* at 40:13-16 and 42:3-7; *Spencer Depo.* at 14:2-11.

In light of the foregoing facts demonstrating that Plaintiff was subjected to excessive force, there is a factual issue as to whether the CERT members violated clearly established law. Thus summary judgment is inappropriate on this basis in the case at bar.

## STANDARD OF REVIEW

Summary judgment is to be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "The movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex Corp.*, 477 U.S. at 328, 106 S.Ct. at 2555, 91 L.Ed.2d 265 (1986).

The burden facing a defendant moving for summary judgment is a difficult one. *Willis v. Roche Biomedical Laboratories, Inc.*, 21 F.3d 1368, 1371-1372 (5th Cir. 1994). "...[C]ourts must be vigilant in determining whether either an inference or circumstantial evidence might suffice to create the existence of a factual dispute about the claim, lest courts use summary judgment as a 'catch penny contrivance to take unwary litigants into [their] toils and deprive [the litigants] of a trial [to which they are actually entitled].' " *Fontenot v. Upjohn*, 780 F.2d 1190, 1197 (5th Cir. 1986).

"At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Indeed, a court's determination of a summary judgment motion requires deference to the nonmoving party, and any doubt as to the existence of a genuine issue for trial should be resolved in favor of the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

## ARGUMENTS AND AUTHORITIES

IDOC Defendants, to wit, the seven (7) CERT members named herein, have moved this Court for summary judgment based on qualified immunity. However,

> "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that ***summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.*** Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir.2005) (en banc) (alteration in original) (internal quotation marks omitted); *see also Espinosa,* 598 F.3d at 537 ("[T]his court has often held that in police misconduct cases, summary judgment should only be granted 'sparingly' because such cases often turn on credibility determinations by a jury.").

*Glenn v. Washington Cty.,* 673 F.3d 864, 871 (9th Cir. 2011) (emphasis added). There are two questions in the qualified immunity analysis: (1) whether there was a deprivation of a constitutional right; and (2) whether that constitutional or statutory right was "clearly established" at the time of the incident. *See Dunklin v. Mallinger,* No. C-11-01275-JCS, 2013 WL 1501446, at 18 (N.D.Cal. Apr. 10, 2013), aff'd, 611 F. App'x 436 (9th Cir. 2015)(citing *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)); *Pearson,* 555 U.S. at 232. The analysis does not need to be done in any particular order. *Id.* In the case at bar, factual disputes prevent summary judgment as to both questions. Additionally, not only are the facts to be construed most favorably to the non-moving party, Plaintiff here, but Plaintiff is entitled to rely on inconsistencies in the testimony of law enforcement.

> The nature of a fatal officer-involved shooting is that the decedent cannot testify. In such circumstances, precedent permits the decedent's account to be constructed,

circumstantially, from inconsistencies in the officers' testimony. The Ninth Circuit makes plain:

> In cases where the best (and usually only) witness who could offer direct testimony for the plaintiff about what happened before a shooting has died, our precedent permits the decedent's version of events to be constructed circumstantially from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement.

> *George v. Morris,* 736 F.3d 829, 834–35 (9th Cir.2013) (citing *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir.1994); *Santos v. Gates,* 287 F.3d 846, 852 (9th Cir.2002) ("Nowhere in our cases have we held that police misconduct may be proved only through direct evidence.")).

*Estate of Crawley v. McRae,* No. 1:13-CV-02042-LJO, 2015 WL 5432787, at *2 (E.D.Cal.

Sept. 15, 2015).

## I. THERE ARE AT LEAST QUESTIONS OF FACT PREVENTING SUMMARY JUDGMENT AS TO WHETHER THERE WAS A DEPRIVATION OF A CONSTITUTIONAL RIGHT HELD BY PLAINTIFF; AS SUCH, SUMMARY JUDGMENT IS NOT APPROPRIATE ON THE BASIS OF QUALIFIED IMMUNITY.

In the case at bar, the nature and quality of the intrusion on the Plaintiff's Fourth and Eighth

Amendment interests is hotly contested and thus should be presented to a jury, not

summarily adjudicated.   Again, where excessive force is used in violation of clearly

established law, the state actor (here, the seven (7) CERT members) are not entitled to

qualified immunity.   Both Correctional Officers Eggiman and Spencer have testified that

it was clearly established law, as of the date of this excessive force incident, that the use of

excessive force violated clearly established law.   *Eggiman Depo.* at 40:13-16 and 42:3-7;

*Spencer Depo.* at 14:2-11.

The second step requires the Court to evaluate the government's interest in relation to the nature and quality of intrusion.  The countervailing governmental interests at stake in the case at bar should be addressed by consideration the following factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, (3) whether she was actively resisting arrest, (4) the availability of less intrusive alternatives to the force employed, (5) whether proper warnings were given, and (6) whether it should  have been apparent to the officers that the person they used force against was emotionally disturbed.[1]  Because the nature and quality of the intrusion into the Plaintiffs' Fourth Amendment rights is the highest level of serious intrusiveness, the governmental interests at stake must be correspondingly high.

## 1.    Severity of the crime.

Reviewing the facts in the light most favorable to Plaintiff, there was no crime being committed at all, let alone a severe crime, on the date of loss relevant to the instant action. When the CERT members began their interaction with Plaintiff, there was no crime being investigated relative to Plaintiff himself; more importantly, Plaintiff was never charged with any crime nor found in possession of any contraband.   No person other than Plaintiff was in any danger or jeopardy.  Plaintiff did not and had not hurt anyone.

Plaintiff does recognize that there is an important, governmental interest in properly executing certain law enforcement duties.  However, "…[T]he use of force that may be justified by that interest. . .necessarily differs both in degree and in kind from the use of

---

force that would be justified against a person who has committed a crime or who poses a threat to the community." *Booke v. Cty. of Fresno*, 98 F. Supp. 3d 1103, 1119 (E.D.Cal. 2015)(citing *Bryan v. MacPherson,* 630 F.3d 805, 829 (9th Cir. 2010)).

In the case at bar, even though the CERT members were searching for suspected contraband at ISCI, that did not afford them carte blanche to beat and seriously injure Plaintiff. When the officers arrived, Plaintiff was residing calmly and resting in Unit 7. He had no contraband on his person or in his cell. Thus the excessive use of force in the case *sub judice* is inherently suspect. This is particularly true in light of the deposition testimony of Correctional Officers Eggiman and Spencer that the CERT members used excessive force on Plaintiff, as set forth above.

### 2.        Immediate threat to safety.

As stated above, when the officers first arrived on scene, Plaintiff was resting in his cell. He was not being combative, aggressive, or resisting the CERT members' action, as set forth above.

Given this evidence, Plaintiff did not pose an immediate threat to the CERT members or to others at the time physical force and violence was used against Plaintiff. The Ninth Circuit has made clear that, "…[T]he desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Estate of Crawley v. McRae*, No. 1:13-CV-02042-LJO, 2015 WL 5432787, at *29 (E.D.Cal. Sept. 15, 2015)(citing, *Glenn,* 673 F.3d at 876–77 (9th Cir.2011))(quoting *Deorle,* 272 F.3d at 1281); *see also Mattos v. Agarano,* 661 F.3d 433, 451 (9th Cir. 2011). These circumstances also weigh against using

significant force, as we have here that resulted in a head injury with significant bleeding
and other injuries requiring medical attention.

### 3.     Plantiff was <u>not</u> actively resisting the actions of the CERT members.

Again, at the time this incident occurred, there was no crime being committed, nor
was anyone in imminent danger.  As set forth above, Plaintiff was not resisting the CERT
members' actions, was handcuffed behind his back, was shackled at the ankle, was only
wearing his underwear, and simply wanted to know why he was being handled so
aggressively.

Other Ninth Circuit cases have held that facts of this nature do not weigh in favor
of using significant force.  *See, e.g., Ostling v. City of Bainbridge Island*, 872 F.Supp.2d
1117, 1129 (W.D.Wash. 2012) ("The Court cannot determine as a matter of law that it was
reasonable to tase a mentally-ill man who had committed no crime when the officers might
simply have backed away from the encounter where the deceased man was in his apartment
allegedly threatening police with a double headed ax at the time he was shot.").  Further,
the Ninth Circuit has instructed that resistance, "…[S]hould not be understood as a binary
state, with resistance being either completely passive or active.  Rather, it runs the gamut
from the purely passive protestor who simply refuses to stand, to the individual who is
physically assaulting the officer." *Hesterberg v. United States*, 71 F. Supp. 3d 1018, 1030
(N.D.Cal. 2014)(citing *Bryan,* 630 F.3d at 830).  Given the fact that there was no crime
being committed and that Plaintiff was following the officers' commands, albeit with
vociferous questioning as to what was going on, this factor weighs in Plaintiffs' favor.

**4.      Availability of less intrusive alternatives.**

In the case at bar, at least two correctional officers have testified that the CERT members' use of force was excessive.   Correctional Officers Eggiman and Spencer specifically stated this in their depositions, as set forth above.   In turn, it is axiomatic that the CERT members had less intrusive alternatives at their disposal.   At a minimum, there is a genuine issue of material fact on this point.

There were other less intrusive force means that should have been considered.   For example, the officers could have been considered using employee presence first.   Or, they could have examined witnesses.   The officers could have backed up.   A canine unit could have been used.   It is a cornerstone of §1983 excessive force cases that:

> [P]olice are required to consider what other tactics if any were available to effect the arrest." *Bryan,* 630 F.3d at 831 (alterations and internal quotation marks omitted).   This inquiry, however, does not disrupt the "settled principle that police officers need not employ the least intrusive degree of force possible;" rather, it "merely recognize[s] the equally settled principle that officers must *consider* less intrusive methods of effecting the arrest and that the presence of feasible alternatives is a *factor* to include in [the] analysis. *Id.* at 831 n. 15 (internal quotation marks omitted).

*Hesterberg v. United States*, 71 F. Supp. 3d 1018, 1032 (N.D.Cal. 2014).   While two of the correctional officers would have considered alternative force measures, there were other options available that were not considered.

At least one Ninth Circuit case has recognized that the number of officers available changes the "tactical calculus" because multiple officers have more ways to resolve the situation without the need for deadly force.   *See, Estate of Crawley v. McRae*, No. 1:13-CV-02042-LJO, 2015 WL 5432787, at 32 (E.D.Cal. Sept. 15, 2015)(citing, *Bryan,* 630 F.3d at 831).   The fact that there were multiple officers again weighs in favor of using less

force.  There were no less than seven (7) CERT members responding to this incident, three (3) of whom literally dragged Plaintiff around in Unit 8 after intentionally knocking his head off of cinder block walls and a metal grate in the strip-out cage in Unit 8.

On the factual record set forth above, there is clearly a factual dispute at to whether the CERT members' excessive use of force violated Plaintiff's constitutional rights under the Fourth and Eighth Amendments to the U.S. Constitution.  That certainly incorporates, in light of the training provided by POST, that these state actors violated clearly established law, when they used excessive force against Plaintiff.  As such, these individuals are not entitled to qualified immunity.  At a minimum, genuine issues of material fact exist which preclude the entry of summary judgment for the CERT members.

## II.  PLAINTIFF DOES NOT OBJECT TO THE DISMISSAL OF WARDEN KEITH YORDY FROM THE INSTANT ACTION, BUT IDOC SHOULD REMAIN A PROPER PARTY ON THE BASIS OF *RESPONDEAT SUPERIOR*, AS ALL CERT MEMBERS WERE EMPLOYEES OF IDOC.

With the instant memorandum, Plaintiff does not oppose the dismissal of Warden Keith Yordy from the instant action.  However, all CERT members were employed by IDOC.  *Spencer Depo.* at 17:22-18:18.  As such, IDOC may be held vicariously liable for the actions of its employees in this excessive force case.  Thus IDOC should not be dismissed from the case at bar.

## CONCLUSION

There are questions of fact related to IDOC Defendants'/CERT members' qualified immunity defense.  Therefore, IDOC Defendants'/CERT Members' *Motion for Summary Judgment* (Dkt. 73) should be denied.

DATED:  This $\underline{26^{th}}$ day of February, 2019.


JOHNSON & MONTELEONE, L.L.P.


Jason R.N. Monteleone
Attorneys for Plaintiff

## <u>CERTIFICATE OF MAILING, DELIVERY, OR FACSIMILE TRANSMISSION</u>

I CERTIFY that on February 26, 2019, I caused a true and correct copy of the

foregoing document to be:

| | |
|---|---|
| ❑ Mailed<br>❑ Hand Delivered<br>☒ CM/ECF Electronic Filing<br>❑ Transmitted Fax Machine<br>     to: (208) 336-7031<br>❑ Transmitted Via E-Mail<br>     to: | Michael J. Elia, Esq.<br>Craig D. Stacey, Esq.<br>MOORE, ELIA, KRAFT & HALL, L.L.P.<br>702 W. Idaho Street, Ste. 800<br>P. O. Box 6756<br>Boise, ID  83702 |

JOHNSON & MONTELEONE, L.L.P.

Jason R.N. Monteleone
Attorneys for Plaintiff

**MEMORANDUM IN OPPOSITION TO IDOC DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 73) -- 14**